UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
BEOM SU LEE,

                          Plaintiff,

           - against -

FLOWER KARAOKE, *et al.*,

                         Defendants.
---------------------------------------------------------- X

**MEMORANDUM
DECISION AND ORDER**

18-cv-2580 (BMC) (PK)

**COGAN**, District Judge.

      Plaintiff *pro se* brings this action for copyright infringement concerning certain songs. He claims that defendants, which are bars and restaurants with karaoke machines, are playing songs and the lyrics of those songs written or compiled by plaintiff's late father, which were copyrighted in South Korea, and that after obtaining the copyright from various family members, he then registered it in the United States.

      Defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(7), or alternatively, for a more definite statement under Rule 12(e). They have strong arguments which may well enable them to prevail on summary judgment. The instant motion, however, does not construe the complaint in the light most favorable to plaintiff and offers evidence of extraneous facts not incorporated in the complaint. When the proper standard for a Rule 12(b)(6) motion is applied, it is clear that defendants' motion must be denied.

# SUMMARY OF FACTUAL ALLEGATIONS IN
# THE COMPLAINT AND INCORPORATED EXHIBITS

Plaintiff is the fourth son of Jae Ho Lee a/k/a Lee, Jae Ho ("JHL"), and holds the copyright of his father's Musical Works (Composition and Lyrics), reflected by U.S. Copyright Certificate TX5-432-807 issued in 2001. This registration covers JHL's copyrighted 125 musical works under the title, "The Collection of Lee, Jae Ho's Musical Compositions."

Prior to his death in 1960, JHL composed over 2000 musical works and he and his works remain well known in South Korea. Upon his death, the South Korean copyrights of JHL's songs were inherited by his surviving family. Plaintiff's mother first held the copyrights, but prior to her death in 2018, she transferred them either to plaintiff or to plaintiff's brother, Beom Seung Lee ("Seung"). Seung, in turn, assigned whatever interest he had in the copyrights to plaintiff on August 1, 2001.

In April, 2018, plaintiff visited a number of defendants' karaoke rooms and found that they contained songbooks with one or more of the copyrighted songs on them, and that the songs were viewable on the karaoke screen. None of the defendants have licenses to allow publication of the copyrighted songs in this manner.

U.S. Copyright Registration TX-5-432-807 describes the "Title of this Work" as "The Collection of Lee, Jae Ho's Compositions (125 Songs Listed inside the Book)." It describes the "Nature of this Work" as "The Korean Popular Song (Lyrics)," and the author as "Lee, Jae Ho."

## DISCUSSION

I.       **Rule 12(b)(6)**

The standard for relief under Rule 12(b)(6) has been too often repeated to require extended discussion. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. To determine if dismissal for failure to state a claim is appropriate, the Court must "accept as true all facts alleged in the complaint" and "draw all reasonable inferences in favor of the plaintiff." Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007). When considering a motion to dismiss, "[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims." Id. (internal quotation marks omitted). Although the Court must "take all of the factual allegations in the complaint as true" for the purpose of a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678.

In considering whether to dismiss a complaint under Rule 12(b)(6), the Court is "generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference." Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002). The Court may also consider documents that, although not attached to the complaint as exhibits or incorporated by reference, are "integral" to the pleading. Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).

In addition, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). Such pleadings are "to be liberally construed," Ahlers v. Rabinowitz, 684 F.3d 53, 60 (2d Cir. 2012), and interpreted "to raise the strongest arguments that they suggest." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).

Defendants raise a number of points that they assert require dismissal.

Their first is cryptic. It is based on a document from another case that plaintiff brought in the Central District of California against Los Angeles karaoke bars accused of the same thing as defendants here. See Lee v. eBay, 17-cv-05179 (C.D. Cal. Nov. 13, 2017) [184]. That document is a registration in Korean (defendants have provided a certified translation) of a table of contents from a work entitled "The Collection of Lee, Jae Ho's Compositions." Because this document appears to have been filed in the Central District of California case, there is a banner near the middle of the first page of the document containing the Central District of California case number, and the U.S. copyright registration number cited in plaintiff's complaint.

Based on the U.S. copyright registration number beginning with "TX", defendants argue that all that has been copyrighted in the U.S. is a book of lyrics, not the performance rights to the songs. They base this argument on the fact that under federal copyright regulations, "TX" denotes printed works, while "PA" denotes works of performing arts and recordings of those works. See 37 C.F.R. § 202.3(b)(1)(i) and (ii). Defendants' point seems to be that plaintiff can only recover for unauthorized publication of the lyrics, not the performance of the songs.

It is unclear whether defendants are seeking dismissal based on this alleged pleading insufficiency. They assert that "Plaintiff's relief should be limited to infringement of song lyrics

4

and not the musical works themselves." That appears to request some limitation on plaintiff's damages, not a basis to dismiss his claims. If that is what defendants are trying to assert, it has no place in a Rule 12(b)(6) motion. It is clear that at least part of plaintiff's claim involves the misuse of lyrics, consistent with defendants' use of the lyrics in the karaoke machines.

Defendants' second argument is based on their contention that all that has been copyrighted is a compilation of songs, not individual songs. In their view, this means that anyone is free to perform or even publish the individual songs as long as they do not substantially duplicate the book of songs. Defendants assert that there are two ways to register multiple works at the same time – as a "single work" registration or as a "compilation." See 37 C.F.R. § 202.3(b). Plaintiff's copyrighted material cannot be a "single work," they contend, because to meet that standard, the songs must all have been first published together at the same time. See Senisi v. John Wiley & Sons, Inc., 13-cv-3314, 2015 WL 7736545 (S.D.N.Y. Nov. 30, 2015). Since the table of contents of the book shows that the songs were composed between 1939 and 1960, defendants assert that "common sense indicates that they were not published for the first time" together. Nor, according to defendants, can the songs qualify as a "compilation," because that requires creative input and this is merely a collection of already published songs without creative input.

Neither of these arguments has any place in a Rule 12(b)(6) motion, even if I assume that the document from the California case is properly considered in that context. As to whether the copyrighted material constitutes a single work, defendants might think it is "common sense" to assume prior publication of at least some of the songs because of their dates of composition, but there is nothing in the complaint that tells me that, and I have no basis to assume it. For all I know, JHL was the Alan Lomax of South Korea, compiling songs that were only known to him

orally over a long period of time and publishing them for the first time in 1960. It is noteworthy that one of the two cases relied upon by defendants for this point, Senisi, was decided on a full summary judgment record, and in the other, McLaren v. Chico's FAS, Inc., No. 10-CV-2481, 2010 WL 4615772, at *2 (S.D.N.Y. Nov. 9, 2010), it was apparent "[b]ased on the allegations of the complaint alone" that prior publication had occurred.

Even assuming that the copyrighted material is a collective work, I cannot find as a matter of law that it has no creative element. Unlike the designs in McLaren, I have no idea whether there was a selection process in determining which songs would be included in the copyrighted material.

Defendants' next argument is that plaintiff has failed to plead any acts of infringement. The allegations that he has made are that each defendant has either a TJ Media Karaoke machine or a KUMYOUNG Karaoke machine and that the TJ machines have forty-two (42) of JHL's musical works. He also alleges that he rented karaoke rooms at some, but not all, of defendants' premises and made video recordings of the infringing material.

According to defendants, this is not enough to state a valid claim. Plaintiff, they argue, has not alleged which defendants performed which songs, nor that the KUMYOUNG machines have any of the copyrighted songs at all. Defendants' argument is that to plead a valid claim, plaintiff must attribute particular songs to particular defendants rather than engaging in group pleading.

Defendants also point out that just because one or more of the titles of the copyrighted songs were in their karaoke books does not mean that anyone ever played one, and if not, then there would be no public performance of the song. Public performance, they assert, is a required element of a claim for relief for copyright infringement; it is not enough that the works are

6

available to be infringed.  See Elektra Entertainment Group, Inc. v. Barker, 551 F. Supp. 2d 234, 245 (S.D.N.Y. March 31, 2008).  Yet "the offer to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, can violate" a copyright.  Id. at 242. (internal quotation marks, alterations, and citations omitted).  If the songs were in their karaoke books, they weren't there to take up space.  They were there as an offer for customers to play the songs in defendants' karaoke rooms.

Defendants characterize these karaoke rooms as "non-public," and, and even if they are public, they assert that there is no proof that JHL's copyrighted songs were ever performed in them.  The first point requires consideration of extensive facts outside of the complaint, and the latter point asks me to again draw inferences in defendants' favor.  Neither argument is appropriate for a Rule 12(b)(6) motion.

The "group pleading" argument has some attraction, but I reject it at this stage because a plausible inference can be drawn that JHL's songs are so well known that even those defendants which plaintiff did not expressly visit may have infringed.  In addition, I do not know what, if any, relationship exists between defendants (I note that all but one have appeared by one law firm), but if there is some relationship, it is not implausible that their karaoke books contain the copyrighted material.[1]

Plaintiff is cautioned, however, that if he lacks a good faith basis for alleging that each defendant infringed the subject copyright, he may be exposed to paying those defendants'

---

[1] Defendants point out that in a related case in the Central District of California, Lee v. eBay, No. 17-cv-05179, 2018 WL 1941974 (C.D. Cal. Feb. 8, 2018), the district court dismissed select defendants as to which there were no specific allegations of infringement.  As defendants also point out, however, the case is not binding authority on this Court.  I do not think it gives enough deference to a *pro se* plaintiff concerning the pleading of facts that are exclusively within defendants' control.

proportionate share attorneys' fees incurred in defending this action. In dealing with a *pro se* litigant at an early stage of the case, and given what appears to be an undisputed fact that plaintiff has at least some legal rights in the copyrighted material, the Court is willing to presume good faith on plaintiff's part. Should that assumption prove incorrect, plaintiff will be held to the same level of responsibility under Federal Rule of Civil Procedure 11 as any litigant or lawyer.[2]

Finally, relying on ABKCO Music, Inc. v. Stellar Records, Inc., 96 F.3d 60, 64 (2d Cir. 1996), abrogated on other grounds, Salinger v. Colting, 607 F.3d 68 (2d Cir. 2010), defendants contend that only producers and distributors, not owners of copyrighted material, can sue for the infringement of "synch" rights, *i.e.*, the right to reproduce copyrighted lyrics on a karaoke screen, and that even as to producers and owners, there is a distinction between karaoke discs that display only the lyrics and those that display lyrics against an added video background. It suffices to note at this stage that defendants' misread ABKCO, which affirmed a preliminary injunction in favor of a copyright owner, and that the preliminary injunction record developed in the district court contained far more factual information than the face of the complaint to which I am limited here.

Defendants may well prevail on one or more of these points after discovery, but dismissing a *pro se* complaint at this stage would be inconsistent with the standards governing Rule 12(b)(6) motions against *pro se* litigants.

II.  **Rule 12(b)(7)**

Based on certain ambiguities in the copyright chain of title, defendants contend that plaintiff lacks standing to bring this action because he is not the sole owner of the material.

---

[2] I note that plaintiff has already taken a voluntary dismissal as to the one of the defendants against which he commenced this case.

Because of that, they contend, he may not maintain this action without joining the co-owners as indispensable parties pursuant to the principle that an action for infringement must be brought by all who have an ownership interest in the copyrighted material.

Once again, defendants' attempt to raise this point in the context of Rule 12(b) puts too heavy a burden on plaintiff at this early stage of the case. Defendants have phrased this alleged deficiency of the pleading in the language of trial, not in the language of pleading. They point out that plaintiff has not "established," "demonstrated" or "shown" or even "proven" that he is the exclusive owner. But in the Rule 12(b)(7) context, plaintiff need only allege a plausible theory that he is the sole owner. Defendants, as the moving parties, bear the burden in motions to dismiss under Rule 12(b)(7), which "[f]ederal courts are extremely reluctant to grant … ." Nahl v. Jaoude, 354 F. Supp. 3d 489, 505 (S.D.N.Y. 2018) (internal quotation marks omitted).

Defendants ignore the principle that the allegations of the complaint must be taken as true – unless the moving party presents evidence outside of the pleadings that contradict these allegations, which defendants have not done here. See id. The complaint plainly alleges that upon JHL's death, his family succeeded to the South Korean copyright. No one has told me anything about the South Korean law of inheritance, or whether JHL even left a will. The first registration activity in South Korea was shared between plaintiff and his mother in 1999. I see nothing implausible about the allegation thus far.

Defendants, however, point out that plaintiff took a purported assignment from his brother Seung two years later. How could his brother make the assignment, defendants ask, if plaintiff and his mother held the copyright after 1999 and prior to her death? Defendants assert that there is no way to remedy the conflict between the registration and his brother's assignment to him.

Viewing the allegations in the light most favorable to plaintiff, I think there is. We do not know, for example, if there was a dispute between plaintiff and Seung which was settled by the assignment. We do not know if the assignment was in the nature of a "quitclaim" assignment relinquishing any claim of interest that Seung might have asserted. Again, plaintiff has to prove nothing at this stage. I see nothing implausible based on the language of the complaint that would preclude him from being sole owner.

Defendants' final point is that indispensable parties are missing from this action. That argument has two prongs. First, defendants assert that although the copyrighted material lists JHL as the "composer" of the songs, "nearly all of the lyrics of such songs were composed by other individuals." From there, they contend that the other composers, whoever they are, have to be joined in this action. In support, defendants provide a document that identifies various individuals as the "lyrics writer" for songs where JHL is identified as the composer. However, that is not sufficient to establish as a matter of law that any of these unknown composers continue to have rights that would conflict with the rights that plaintiff asserts, and defendants have not provided any evidence that these unknown composers have such rights. To the contrary, the case defendants cite in support of this argument establishes that "the right to print a song's lyrics is exclusively that of the copyright holder" instead of the author of the lyrics. ABKCO, 96 F.3d at 64.

Second, defendants point out that the assignment from Seung was not just to plaintiff, but to a company called International Artists Company ("IAC"), described in the assignment as a "U.S.A. local corporation." From there, defendants contend that IAC must be joined as it has an interest in the copyrighted material. They advise me in their memorandum that plaintiff is CEO of IAC and speculate that perhaps plaintiff did not join it because as a corporation, it would have

had to appear through counsel. See Grace v. Bank Leumi Trust Co. of NY, 443 F.3d 180, 192 (2d Cir. 2006). Again, I do not know if Seung conveyed to plaintiff and IAC any rights that plaintiff did not already have through his mother. I don't know if IAC still exists, if it ever did. And I don't know if it ever conveyed any interests it had to plaintiff. Thus, defendants would have me draw a number of inferences in their favor, the opposite of the standard that I am to apply.

III.   **Rule 12(e)**

In considering defendants' alternative motion for a more definite statement, I start with the principle that "[m]otions pursuant to Rule 12(e) are disfavored and should not be granted unless the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." Greater N.Y. Auto. Dealers Ass'n v. Envtl. Sys. Testing, Inc., 211 F.R.D. 71, 76 (E.D.N.Y. 2002) (internal quotation marks and citations omitted). "The rule is designed to remedy unintelligible pleadings, not to correct for lack of detail." Kuklachev v. Gelfman, 600 F. Supp. 2d 437, 456 (E.D.N.Y. 2009) (internal quotation marks and citation omitted).

I have seen *pro se* complaints that are a lot worse than this one. Defendants may not have the particulars for which plaintiff is suing, but as to their own conduct, a copyright claim does not have to be pleaded with particularity. See Maverick Recording Co. v. Goldshteyn, 05-cv-4523, 2006 WL 2166870 (E.D.N.Y. July 31, 2006). More importantly, all defendants have to do to figure out how to respond to this complaint is compare their karaoke song books to the table of contents from JHL's book and they will then know.

Defendants understandably raise the problem of a fishing expedition if broad discovery occurs. There are essentially two categories of discovery that defendants need to defend this

case. The first is whether they are offering or playing any karaoke versions of JHL's songs, and whether doing so in their private karaoke rooms constitutes a public performance. That category is entirely within their control. The second is the chain of copyright title through which plaintiff claims ownership of the copyright. That is largely within plaintiff's control, although perhaps it is also partially in the public record, here or in South Korea. In any event, the burden will be on plaintiff to prove his ownership, and he will have to produce sufficient evidence to demonstrate it. The Court will then determine whether there are outstanding factual issues on summary judgment, or if defendants concede that there are, the factfinder will resolve them at trial.

I have full confidence that Magistrate Judge Kuo, who will manage the pretrial discovery in this case, will structure discovery to prevent the free-for-all that defendants fear. Perhaps she will determine that the chain of title issue is the most important issue and should constitute a first wave of discovery. I leave that to her discretion. In any event, even as to the first category of discovery, with all of those facts in defendants' possession, it should not be onerous for defendants.

## CONCLUSION

Defendants' motion to dismiss [28, 29] is denied.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       April 15, 2019