UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
BEOM SU LEE,                              :

                                  :

             Plaintiff,        :

                                  :

             -against-       :

162 D&Y CORP. (d/b/a FLOWER KARAOKE), :
YS HAPPY CORP. (d/b/a HAPPY KARAOKE), :
HARMONY KARAOKE KTV, INC. (d/b/a    :
HARMONY KARAOKE), OPEN KARAOKE    :
CORP. (d/b/a YUL LIN KARAOKE),        :
CHRISTMAS KARAOKE, LALALA OF NY,  :
INC. (d/b/a FANTAZIA), SAGWANAMOO,  :
INC. (d/b/a SAKWANAMU), BOOMERANG II, :
INC. (d/b/a BOOMERANG), JKK ONE, INC. :
(d/b/a CARAMEL), GOMUNAMU, INC. (d/b/a :
SENSE), SONAKI GROUP INC. (d/b/a     :
TOMATO), NEW MI GOONG CORP. (d/b/a :
ALL IN), SOMETHING 1, INC. (d/b/a     :
SOMETHING ONE INC.), YS2 ENTERPRISES :
INC. (d/b/a CEO BUSINESS CLUB),     :

                                  :

            Defendants.     :
------------------------------------------------------------- X

**REPORT AND
RECOMMENDATION**

18-cv-02580 (BC)(PK)

**Peggy Kuo, United States Magistrate Judge:**

        On April 30, 2018, Beom Su Lee ("Plaintiff") brought this action against 162 D&Y Corp.

(d/b/a Flower Karaoke) ("Flower Karaoke"), Harmony Karaoke KTV Inc. (d/b/a Harmony

Karaoke) ("Harmony Karaoke"), Open Karaoke Corp. (d/b/a Yul Lin Karaoke) ("Yul Lin Karaoke"),

Lalala of NY, Inc. (d/b/a Fantazia) ("Fantazia"), JKK One Inc. (d/b/a Caramel) ("Caramel"),

Gomunamu, Inc. (d/b/a Sense) ("Sense"), Sonaki Group Inc. (d/b/a Tomato) ("Tomato"),

Something 1, Inc. (d/b/a Something One, Inc.) ("Something One, Inc."), and YS2 Enterprises Inc.

(d/b/a CEO Business Club) ("CEO Business Club") (collectively, "Defendants"), alleging that these

karaoke establishments engaged in copyright infringement under the Copyright Act of 1976, 17 U.S.C.

§§ 101 *et seq.* (the "Copyright Act").[1]  (*See* Compl., Dkt. 1.)  Plaintiff now brings a Motion for Default Judgment against Defendants ("Motion," Dkt. 115), which the Honorable Brian M. Cogan has referred to me for a Report and Recommendation.  For the reasons stated below, I respectfully recommend that the Motion be granted and damages be awarded as detailed below.

## BACKGROUND

### I.  Factual Background

Plaintiff is the fourth son of Jae Ho Lee, a well-known and prolific Korean composer.  (Compl. ¶ 6 at 2-3); *see also Su Lee v. Flower Karaoke*, No. 18-CV-2580 (BMC)(PK), 2019 WL 1597309, at *1 (E.D.N.Y. Apr. 15, 2019) [hereinafter *Flower Karaoke*] (summarizing facts set forth in the Complaint and incorporated exhibits). Upon Jae Ho Lee's death in 1960, the South Korean copyrights of his songs were inherited by his surviving family.  (Compl. ¶ 8 at 3.)  Through assignments from Plaintiff's mother and older brother, Plaintiff became the exclusive owner of the copyrights.  (*Id.* at ¶ 8 at 3.)  Plaintiff currently holds the copyright of his father's musical works, as reflected by U.S. Copyright Certificate TX5-432-807 issued in 2001.  ("Certificate," Ex. 1 to Compl. at 15 (ECF pagination), Dkt. 1.)  This registration covers Jae Ho Lee's copyrighted 125 musical works under the title, "The Collection of Lee, Jae Hos Compositions."  (*Id.*)

In April 2018, Plaintiff found that karaoke rooms operated by Defendants contained TJ Media Karaoke machines, which "recorded and contained" 42 of Jae Ho Lee's copyrighted songs.  (Compl. ¶¶ 10-11, at 4; "Inquest Answers" at 1, Dkt. 117; Inquest Transcript ("Tr.") 3:19-4:1, 4:23-25, Dkt. 119.)

---

[1] The Complaint also named YS Happy Corp. (d/b/a Happy Karaoke), Christmas Karaoke, SagwaNamoo, Inc. (d/b/a Sakwanamu), Boomerang II, Inc. (d/b/a Boomerang), and New Mi Goong Corp. (d/b/a All In) as defendants, but those claims were dismissed pursuant to settlement agreements reached between the parties. (Dkts. 37, 99, 104, 110.)  Additionally, in various places on the docket, Something 1, Inc. is referred to as "Spark," SagwaNamoo, Inc. is referred to as "Gaja Karaoke," and JKK One, Inc. is referred to as "Versace."

Customers pay to access the karaoke rooms, which are equipped with a karaoke machine, big screen and songbook listing songs from the machine. (Compl. ¶ 12 at 4.) Defendants charged an hourly fee based on the number of guests, with food and drinks charged separately. (*Id.* at ¶ 12 at 4-5.) Plaintiff was unable to access some of the karaoke rooms because they were expensive. (*Id.* at ¶ 14 at 5.)

Plaintiff went to Defendants Flower Karaoke, Harmony Karaoke, and Yul Lin Karaoke and made video recordings of songs playing on screens inside the karaoke rooms of those establishments, which he submitted as Exhibit 4 to the Complaint. (*See* Declaration in Support of Exhibit 4 to Compl. ("Ex. 4 Decl."), Dkt. 38.) Plaintiff submitted a Declaration stating that Exhibit 4 contains 10 videos and 6 photos of the copyrighted works being played on TJ Media Karaoke machines inside Flower Karaoke (*see id.* at ¶ 4), 19 videos of the copyrighted works being played on TJ Media Karaoke machines inside Harmony Karaoke (*id.* at ¶ 5), and 17 videos of the copyrighted works being played on TJ Media Karaoke machines inside Yul Lin Karaoke. (*Id.* at ¶ 6.) Plaintiff also visited Defendants Fantazia, Caramel, Tomato, Sense, and Something One, Inc. and was told by employees and managers at those establishments that they used TJ Media Karaoke machines. (*Id.* at ¶ 8.)

After the Complaint was filed, Plaintiff requested and was granted permission to inspect Defendants Caramel, Tomato, CEO Business Club, Sense, Fantazia, and Something One, Inc. (Minute Entry dated May 29, 2019, Dkt. 61.) Defendants were instructed to provide Plaintiff with access to their establishments for at least 30 minutes free of charge. (*Id.*) Plaintiff visited Caramel, Tomato, CEO Business Club, and Sense and made video recordings of the copyrighted songs playing inside those establishments. (*See* Plaintiff's Exhibit 24 in Support of Compl. ("Pl. Ex. 24"), Dkt. 64.) Plaintiff submitted the videos as Exhibit 24 to the Complaint.[2] In the videos, Plaintiff is not singing,

---

[2] "The Second Circuit has observed that a motion for default judgment may be granted based on 'the factual allegations in the complaint, combined with uncontroverted documentary evidence submitted by plaintiffs' with their motion." *Hunter v. Shanghai Huangzhou Elec. Appliance Mfg. Co.*, 505 F. Supp. 3d 137, 150

but the songs are audible, and the lyrics are visible on the screen. Plaintiff submitted a letter in which he asserted that the recorded songs are part of the copyrighted work and provided the TJ Media Karaoke machine song numbers for the songs. (*See id.*) Plaintiff was unable to visit Fantazia and Something One, Inc. because Fantazia had closed and Something One, Inc. had changed its name. (*Id.* at 1.)

None of the Defendants have licenses, authorization, or permission to use the copyrighted songs. (Compl. ¶ 17 at 6.)

## II. Procedural Background

Defendants filed Answers to the Complaint on April 29, 2019. (Dkts. 45-48, 50, 52-55.)

On March 25, 2020, Plaintiff filed a motion for summary judgment. (Dkt. 76.) Defendants filed their opposition on June 23, 2020. (Dkt. 81.)

On July 29, 2021, Defendants' attorney Soohyun Kim filed a motion to withdraw as counsel. (Dkt. 100.) A hearing was held by telephone on August 12, 2021. (*See* Minute Entry and Order dated Aug. 12, 2021.) Although Defendants were notified of the hearing and ordered to have representatives present (*see* Scheduling Order dated July 30, 2021), none appeared. (*See* Minute Entry and Order dated Aug. 12, 2021.) During the hearing, Kim stated that he was no longer in contact with Defendants and that they had not responded to his emails or calls. (*Id.*) The Court granted Kim's motion and ordered Defendants to obtain new counsel no later than September 13, 2021. (*Id.*) Defendants were warned that if they failed to obtain counsel, they would be in default, as a corporation may only appear through counsel. (*Id.*)

On August 23, 2021, the Court issued a Scheduling Order for a motion hearing by telephone

---

(N.D.N.Y. 2020) (quoting *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 189 (2d Cir. 2015); *see also* Fed. R. Civ. P. 55(b)(2) ("The court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages; [] establish the truth of any allegation by evidence; or [] investigate any other matter.").

on Plaintiff's motion for a proposed temporary injunction and impound request to be held on October 1, 2021; it also reminded Defendants that they must obtain new counsel by September 13, 2021 or they would be in default. (Scheduling Order dated Aug. 23, 2021.)  On August 24, 2021, the Clerk of Court mailed copies of the Scheduling Order to Defendants at their respective addresses.  A copy of the Court's Scheduling Order was returned as undeliverable to Defendants Fantazia and Something One, Inc.  (*See* Dkt. 105.)

No new counsel entered an appearance.

On October 1, 2021, none of the Defendants appeared at the telephone conference or informed the Court that they had obtained new counsel.  (Minute Entry and Order dated Oct. 1, 2021.)  Defendants were again warned in a written order that if they did not appear at the next conference, scheduled for October 22, 2021, default may be entered against them.  (*Id.*)  Defendants failed to appear at the conference on October 22, 2021 or obtain new counsel.  (Minute Entry dated Oct. 22, 2021.)

On November 23, 2021, Plaintiff sought a Certificate of Default against Defendants.  (Dkt. 112.)  The Clerk entered the Defendants' default on December 14, 2021.  ("Entry of Default," Dkt. 113.)  Thereafter, the Court struck Defendants' Answers and denied Plaintiff's pending motion for summary judgment as moot.  (Order dated Dec. 15, 2021.)  Plaintiff filed the Motion for Default Judgment on January 3, 2022.  (*See* Memorandum in Support of the Motion for Default Judgment ("Mem. in Sup."), Dkt. 115-1.)

On April 21, 2022, the Court scheduled an inquest by telephone to be held on May 23, 2022. (Scheduling Order dated Apr. 21, 2022).  The Clerk of Court mailed copies of the Scheduling Order to Defendants on April 25, 2022 notifying them of the inquest.  Plaintiff submitted written responses to the Court's questions in anticipation of the inquest.  (Inquest Answers.)  On May 23, 2022, the Court held the inquest by telephone.  (*See* Minute Entry dated May 23, 2022; Tr.)  Defendants did not

appear. (*See* Minute Entry dated May 23, 2022.) After the inquest, Plaintiff made a supplemental filing in support of his Motion. (*See* Dkt. 118.)

## DISCUSSION

### I.  Default Judgment Standard

Federal Rule of Civil Procedure 55 governs the procedure that applies when there is a default during litigation. *See* Fed. R. Civ. P. 55; *see also City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). It "provides a 'two-step process' for the entry of judgment against a party who has failed to defend . . . ." *Mickalis*, 645 F.3d at 128; *see also GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). First, when a defendant has "failed to plead or otherwise defend," the Clerk of the Court enters the defendant's default. Fed. R. Civ. P. 55(a). Then, the plaintiff must "apply to the court for default judgment." Fed. R. Civ. P. 55(b)(2).

It is well-established that "[a] default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true." *United States v. Myers*, 236 F. Supp. 3d 702, 706 (E.D.N.Y. 2017). Even after the entry of default, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Trs. of Plumbers Loc. Union No. 1 v. Philip Gen. Constr.*, No. 05-CV-1665 (NG)(RML), 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007) (quoting *In re Wildfire Ctr., Inc.*, 102 B.R. 321, 325 (E.D.N.Y 1989)). In determining liability, a court accepts as true all well-pleaded factual allegations, drawing all reasonable inferences in favor of Plaintiff. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

In conducting its analysis, the Court must ensure that (1) jurisdictional requirements are satisfied, *see Mickalis*, 645 F.3d at 125-27, 133; (2) the plaintiff took all the required procedural steps in moving for default judgment, *see* Loc. Civ. R. 55.2; and (3) the plaintiff's allegations, when accepted as true, establish liability as a matter of law. *See Finkel*, 577 F.3d at 84.

"Where a party initially appears and answers, but subsequently fails to continue in the case, a default judgment can still issue" if the party fails to continue defending the case. *Mister Softee, Inc. v. Tsirkos*, No. 14-CV-1975 (LTS)(RLE), 2015 WL 7458619, at *3 (S.D.N.Y. Nov. 23, 2015); *see also Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 454 (2d Cir. 2013); *Mickalis*, 645 F.3d at 129-30. A corporate defendant also defaults if it does not appear through counsel. *See Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305 (2d Cir. 1991) (affirming entry of default judgment where corporate entity failed to appear through counsel).

Here, while Defendants initially appeared with counsel and participated in the litigation, they failed to obtain new counsel or appear after attorney Kim withdrew as counsel on August 12, 2021. Since that date, Defendants have not appeared through any counsel, which is required for corporate entities to appear in federal court. *E.g.*, *Eagle Assocs.*, 926 F.2d 1305 (holding that 28 U.S.C. § 1654 requires a corporation appear through counsel); *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20 (2d Cir. 1983) (same); *see Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201-02 (1993).

Accordingly, default was properly entered against Defendants and their Answers were struck. (Order dated Dec. 15, 2021.)

### A. Jurisdiction

When a party seeks default judgment, the Court must ensure that it has jurisdiction over the matter. *See Mickalis*, 645 F.3d at 125-26, 133.

The Court has subject matter jurisdiction under 28 U.S.C. § 1338(a) because the district courts possess "original jurisdiction of any civil action arising under any Act of Congress relating to . . . copyrights . . . ." 28 U.S.C. § 1338(a).

The Court has personal jurisdiction over Defendants because they appeared in this matter and did not raise a challenge to personal jurisdiction. *See* Fed. R. Civ. P. 12(h)(1); *Mickalis*, 645 F.3d at 133; *"R" Best Produce, Inc. v. DiSapio*, 540 F.3d 115, 123 (2d Cir. 2008) ("It is well settled that the defense

of lack of personal jurisdiction can be waived, [] and, as to a defendant appearing in an action, the defense is deemed waived if not raised by motion before trial . . . ." (citations omitted)).  Defendants are also New York corporations.  (Compl. ¶ 5 at 2.)

### B.  Procedural Requirements

Plaintiff has complied with the procedural requirements of Local Civil Rules 7.1 and 55.2 by filing the following documents in support of the Motion:  Notice of Motion (Dkt. 114); Memorandum in Support of Plaintiff's Motion (Mem. in Sup.); a Proposed Form of Default Judgment (Dkt. 115-2); the Clerk's Certificate of Default (Entry of Default); the Complaint (Compl.); Proof of Service of the Complaint (Dkt. 1-1); and Proof of Service of the Motion and Motion papers to the defaulting parties (Dkt. 115-3).

### C.  Liability

#### 1.  Legal Standard

When determining liability, the Court will accept as true all well-pleaded allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *See Finkel*, 577 F.3d at 84; *Greyhound Exhibitgroup, Inc. v. E.L.U.L Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).  However, "[a] default 'only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant.'"  *Thurman v. Bun Music*, No. 13-CV-5194 (CM)(MHD), 2015 WL 2168134, at *3 (S.D.N.Y. May 7, 2015) (quoting *Laboratorios Rivas, SRL v. Ugly & Beauty, Inc.*, 2013 WL 5977440, at *4 (S.D.N.Y. Nov. 12, 2013) (citation omitted), *R&R adopted*, 2014 WL 112397 (S.D.N.Y. Jan. 8, 2014)).

#### 2.  Copyright Infringement

To establish copyright infringement under the Copyright Act, a plaintiff must establish "(1) ownership of a valid copyright, and (2) unauthorized copying of the copyrighted work or some other violation of the exclusive rights afforded to the owner by the Copyright Act."  *Entral Grp. Int'l, LLC*

*v. N.Y. One Café Inc.*, No. 05-CV-1655 (CPS), 2007 WL 869587, at *2 (E.D.N.Y. Mar. 20, 2007) [hereinafter *N.Y. One*]; *see Lee v. Karaoke City*, No. 18-CV-3895 (PAE)(SDA), 2020 WL 9815181, at *3 (S.D.N.Y. Dec. 18, 2020) [hereinafter *Karaoke City SJ R&R*].

### a.  Plaintiff is the owner of a valid, registered copyright

"A certificate of registration from the United States Register of Copyrights constitutes prima facie evidence of the valid ownership of a copyright, although that presumption of ownership may be rebutted." *Hamil Am., Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999); *see also* 17 U.S.C. § 410(c) ("[A] certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.").

The Complaint and supporting documents demonstrate that Plaintiff is the owner of a valid copyright in the works at issue.  Upon his death, Jae Ho Lee's copyrights were inherited by his surviving family, and later assigned to Plaintiff.  A Certificate of Registration, No. TX5-432-807, from the U.S. Copyright Office, indicates that the copyrighted collection was first published on October 10, 1996, and the copyright became effective on August 6, 2001.  (*See* Certificate.)  This constitutes prima facie evidence of Plaintiff's ownership of a valid copyright, which defaulting Defendants fail to rebut.

Accordingly, Plaintiff has established that he is the owner of a valid copyright in the works at issue.[3]

---

[3] Plaintiff has brought other cases in the District of New Jersey, the Southern District of New York, and the Central District of California claiming that karaoke bars in those districts infringed on this same copyright; the courts there found that Plaintiff plausibly alleged possession of a valid copyright in the relevant works.  *See Lee v. Roku Karaoke*, No. 18-CV-8633 (KM)(ESK), 2022 WL 4354641, at *2 (D.N.J. Sept. 19, 2022) [hereinafter *Roku Karaoke*]; *Lee v. Karaoke City*, No. 18-CV-3895 (PAE), 2020 WL 5105176, at *4-6 (S.D.N.Y. Aug. 31, 2020) [hereinafter *Karaoke City MTD*]; *Lee v. eBay*, No. 17-CV-5179 (SVW)(E), 2018 WL 1941974, at *2-3 (C.D. Cal. Feb. 8, 2018) [hereinafter *eBay*].

### b.  Defendants infringed on Plaintiff's copyright

Under 17 U.S.C. § 501, liability for copyright infringement exists if an individual or entity "violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 . . . ." 17 U.S.C. § 501(a).  Among the rights conveyed to a copyright owner under Section 106 are the rights to "(1) reproduce the copyrighted work; (2) prepare derivative works; (3) distribute copies of the work by sale or otherwise; . . . (4) perform the work publicly; and (5) display the work publicly." *Elektra Ent. Grp., Inc. v. Barker*, 551 F. Supp. 2d 234, 241 (S.D.N.Y. 2008) (quoting *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992)).

The Complaint alleges that Defendants infringed on Plaintiff's copyright through the unauthorized use of the copyrighted works, public performance of the works, and synchronization of the works.  (Compl. ¶ 17 at 6.)  Plaintiff alleges that Defendants' karaoke bars contain TJ Media Karaoke machines, and that each machine contains the copyrighted works.  Plaintiff accessed seven of the Defendants' karaoke rooms, by paying a fee or obtaining leave of the Court to inspect them, and submitted video recordings taken inside those establishments.

Through his videos and accompanying Declaration and letter, Plaintiff has established that Defendants Flower Karaoke, Harmony Karaoke, Yul Lin Karaoke, Caramel, Tomato, CEO Business Club, and Sense infringed on his right to publicly perform the copyrighted works under 17 U.S.C. § 106(4).  *See, e.g.*, *Karaoke City SJ R&R*, 2020 WL 9815181, at *2, 7 (denying defendant's summary judgment motion where plaintiff alleged copyright infringement and provided evidence that he had "rented private karaoke rooms at Defendants' business establishments and recorded videos of himself playing" copyrighted songs); *Beom Su Lee v. Karaoke City*, 18-CV-3895 (PAE)(SDA), 2019 WL 2451430 (S.D.N.Y. Apr. 22, 2019) [hereinafter *Karaoke City MTD R&R*] ("Plaintiff plausibly has alleged a public performance by pleading that he played certain of the copyrighted musical works at Defendants'

karaoke establishments."), *R&R adopted sub nom. Karaoke City MTD*, 2020 WL 5105176; *see also eBay*, 2018 WL 1941974, at *2 ("Caselaw is clear that karaoke constitutes a public performance.").

Performance means "to recite . . . either directly or by means of any device or process." *Elohim EPF USA, Inc. v. 162 D&Y Corp.*, No. 19-CV-2431 (PKC)(SDA), 2022 WL 2072565, at *1 (S.D.N.Y. June 9, 2022) [hereinafter *162 D&Y Corp.*] (alteration in original) (quoting 17 U.S.C. § 101). To perform the work "publicly" means, *inter alia*, "to perform . . . it at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered . . . ." *Id.* (alteration in original) (quoting 17 U.S.C. § 101). The playing of a song in a privately rented karaoke room can constitute a public performance as long as it is located within an establishment that is open to the public. *See, e.g., 162 D&Y Corp.*, 2022 WL 2072565, at *2 ("If the establishment is predominantly in character a public space, despite the presence of small private areas, then the performance of a copyrighted work is public."); *Karaoke City MTD R&R*, 2019 WL 2451430, at *6 (finding plaintiff plausibly alleged public performance where "despite the fact that there are private rooms within the karaoke venues, the karaoke bars and clubs themselves are open to the public and, thus, are 'public' places"); *eBay*, 2018 WL 1941974, at *4 ("Although Defendants' customers can sing their karaoke songs in private rooms, the existence of private rooms does not diminish the fact that these establishments are open to the public.").

The fact that Plaintiff, the copyright holder, was the one who caused the songs to be played in Defendants' establishments does not affect Defendants' liability. *See, e.g., Karaoke City MTD R&R*, 2019 WL 2451430, at *6 ("[T]he fact that Plaintiff played some of the songs himself does not undermine his claim."); *Elohim EPF USA, Inc. v. Total Music Connection, Inc.*, No. 14-CV-02496 (BRO), 2015 WL 12655556, at *12 (C.D. Cal., Oct. 1, 2015) ("Regardless of how the works are performed, Plaintiffs' injury here is that Defendants failed to pay for the licensing rights to allow its customers to publicly perform Plaintiffs' copyrighted works.").

In addition to unauthorized public performance of copyrighted works, the Copyright Act provides alternative grounds for liability, including the unauthorized distribution of the works by sale or otherwise. *See, e.g.*, 17 U.S.C. § 106(3). Courts have found that liability can be imposed under Section 106(3) where copyrighted works are distributed and offered for further public performance. *See, e.g., Elektra*, 551 F. Supp. 2d at 242 ("'[T]he offer[] to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display,' can violate the distribution right of Section 106(3)." (alteration in original) (quoting 17 U.S.C. § 101)); *Flower Karaoke*, 2019 WL 1597309, at *3 ("If the songs were in their karaoke books, they weren't there to take up space. They were there as an offer for customers to play the songs in defendants' karaoke rooms."); *but see Grecco v. Age Fotostock Am., Inc.*, No. 21-CV-423 (JSR), 2021 WL 4555599, at *5 (S.D.N.Y. Oct. 5, 2021) (holding that in a case involving photographs offered for licensing on a website, "an unconsummated offer to distribute does not give rise to liability under Section 106(3) of the Copyright Act").

Although Plaintiff did not show actual performance at the karaoke bars of Fantazia and Something One, Inc., he has established that these Defendants infringed on his copyright by offering customers the opportunity to use the TJ Media Karaoke machines to perform the copyrighted works. *See, e.g., Entral Grp. Int'l, LLC v. Sun Sports Bar Inc.*, No. 05-CV-4836 (CBA), 2007 WL 2891419, at *3 (E.D.N.Y. Sept. 28, 2007) (finding copyright infringement where karaoke bar customers were "offered the opportunity to access and perform" the copyrighted works without authorization to copy or use); *Entral Grp. Int'l, LLC v. Legend Café & Karaoke, Inc.*, No. 05-CV-2292 (CBA), 2007 WL 9718815, at *1 (E.D.N.Y. June 1, 2007) (finding complaint's allegation that "defendants are commercially using the [copyrighted] [w]orks without authorization from [plaintiff]" sufficient to plausibly allege copyright violation where copyrighted works were observed by "brows[ing] through the list of available karaoke music selections"), *R&R adopted*, 2007 WL 9718816 (E.D.N.Y. June 27, 2007); *N.Y. One*, 2007 WL

869587, at *4-5 (finding defendant liable for "distributing and copying" where plaintiff's investigator was given access to a computer monitor that listed karaoke selections, including the copyrighted works, and "was offered the opportunity . . . to access and perform karaoke audio-visual works"); *Entral Grp. Int'l, LLC v. Honey Café on 5th Inc.*, No. 05-CV-2290 (NGG)(MDG), 2006 WL 3694584, at *2, 5 (E.D.N.Y. Dec. 14, 2006) [hereinafter *Honey Café*] (finding liability for copyright infringement where plaintiff's investigator "observed that a significant portion of the [copyrighted works] were available to customers" and individuals "were able to access audio-visual karaoke pieces, including [copyrighted works]" without copyright holder's authorization).

Plaintiff has established that each of the Defendants infringed on his copyright in the works at issue. Accordingly, I respectfully recommend that Defendants be found liable for copyright infringement.

## II. Damages

Although a default judgment establishes a defendant's liability, the Court must make an independent determination of the damages to be awarded. *See Finkel*, 577 F.3d at 83 n.6; *Greyhound*, 973 F.2d at 158.

Pursuant to 17 U.S.C. § 504, a copyright owner may elect to receive an award of either actual damages, including the defendant's profits, or statutory damages. 17 U.S.C. § 504(c)(1); *see Yague v. Visionaire Publ'g LLC*, No. 19-CV-11717 (LJL), 2021 WL 4481178, at *3 (S.D.N.Y. Sept. 29, 2021) (finding that a plaintiff may request statutory damages and actual damages in the alternative and can elect which to receive). Plaintiff does not indicate whether he is choosing actual or statutory damages, instead requesting both actual damages in the amount of $28,000 per Defendant and "statutory damages as the Court deems just as specified in 17 U.S.C. § 504(c)(1) . . . ." (Mem. in Sup. at 8.)

Both forms of damages will be considered, although only one will be awarded.

### A. *Actual Damages*

Under Section 504(b), a plaintiff is "entitled to recover the actual damages suffered . . . as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing actual damages." 17 U.S.C. § 504(b). "In calculating actual damages, 'the primary measure of recovery is the extent to which the market value of the copyrighted work at the time of infringement has been injured or destroyed by the infringement.'" *Baker v. Urb. Outfitters, Inc.*, 254 F. Supp. 2d 346, 356 (S.D.N.Y. 2003) (quoting *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1118 (2d Cir. 1986)). To ensure the award is not based on "undue speculation," "the owner must show that the thing taken had a fair market value." *On Davis v. Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001). To establish the infringer's profits, "the copyright owner is required to present proof only of the infringer's gross revenue . . . ." *Bus. Trends Analysts, Inc. v. Freedonia Grp., Inc.*, 887 F.2d 399, 403 (2d Cir. 1989) (quoting 17 U.S.C. § 504(b)).

Plaintiff does not provide a basis for his request for $28,000 in actual damages from each defendant, except to state that it "is a discounted flat rate calculated based on the defendants' video evidences and Jae Ho Lee's music contained in TJ Media karaoke . . . ." (Motion at 3.) Plaintiff also invokes the range of possible statutory damages, stating when asked about his request for actual damages, "The law provides 750 to 30,000 for each infringement." (Tr. 11:7-8.)

In appropriate circumstances, the court may award actual damages based on "the fair market value of a license covering the defendant's infringing use." *On Davis*, 246 F.3d at 172 (finding an award of actual damages based on fair market value of the license appropriate where plaintiff had "adduced sufficiently concrete evidence of a modest fair market value of the use made by the [defendant]," the infringement was substantial, and statutory damages were not available to the plaintiff because he had not registered his copyright at the time of the infringement). In determining the fair market value of a license, the court may consider the fees that a plaintiff has previously charged.

*See Baker*, 254 F. Supp. 2d at 357-59 (finding "past licensing can serve as a benchmark for measuring the fair market value of a reasonable license fee"). However, "[t]he question is not what the owner would have charged, but rather what is the fair market value." *On Davis*, 246 F.3d at 166.

Plaintiff states that the licensing fee he would charge for the copyrighted works today is $1,800 per year. (Tr. 9:18, 10:24-25.) Plaintiff has also charged other rates for the same copyrighted works: between $1,200 and $1,800 per year to some establishments (Tr. 6:14); $1,200 per year to some karaoke bars in the Southern District of New York after reaching settlement agreements with them (*see* Tr. 6:14-7:4, 10:13-16)—although the rate "varies" (Tr. 5:21-25); and $800 in Los Angeles, which was a "special rate." (Tr. 6:6-9.) Plaintiff presents no other evidence of the works' fair market value, basing his valuation solely on the varying rate he has charged. It is, therefore, difficult to discern the fair market value of a license for the copyrighted works.

Likewise, while Plaintiff requests damages in the amount of all profits received by Defendants from unauthorized use of Plaintiff's copyrighted works (Compl. ¶ 4 at 7), he has offered no information regarding Defendants' gross revenue, stating only that Defendants charge customers an hourly rate that varies based on the number of guests in the room. (*See id.* at ¶ 12 at 4-5; Inquest Answers at 2.)

Given this lack of evidentiary support for the fair market value of Plaintiff's licenses or Defendants' profits, I find that actual damages cannot be determined with sufficient certainty and therefore, an award of statutory damages is more appropriate.

### B.  Statutory Damages

Where actual damages are not readily ascertainable, a court may award statutory damages pursuant to 17 U.S.C. § 504(c)(1). *See, e.g., All-Star Mktg. Grp., LLC v. Media Brands Co.*, 775 F. Supp. 2d 613, 621 (S.D.N.Y. 2011) (collecting cases noting that statutory damages are available where actual damages are difficult or impossible to calculate); *Latin Am. Music Co. v. Spanish Broad. Sys., Inc.*, 866 F.

Supp. 780, 782 (S.D.N.Y. 1994) (deeming plaintiff to have elected to receive statutory damages where no proof of actual damages was offered). "Statutory damages need not be directly correlated to actual damages, but they ought to bear some relation to actual damages suffered." *Parsons v. Bong Mines Ent. LLC*, No. 19-CV-0813 (JMA)(AKT), 2021 WL 931506, at *9 (E.D.N.Y. Feb. 18, 2021) (quoting *Mantel v. Smash.com Inc.*, No. 19-CV-6113, 2019 WL 5257571, at *3 (W.D.N.Y. Oct. 17, 2019)), *R&R adopted*, 2021 WL 930259 (E.D.N.Y. Mar. 11, 2021).

Plaintiff requests "such statutory damages as the Court deems just as specified in 17 U.S.C. § 504(C)(1), namely, more than $750.00 nor less than $30,000.00 for the infringements of the copyrights of each work . . . ." (Compl. ¶ 5 at 7; Mem. in Sup. at 8.) Plaintiff also requests that the statutory penalty be increased to $150,000 for the infringements, alleging that Defendants' violations were willful. (Compl. ¶ 5 at 7; Mem. in Sup. at 8.)

In determining the statutory damages to be awarded, the district court enjoys wide discretion. *Fitzgerald Pbl'g*, 807 F.2d at 1116. In its determination, the Court must consider:

> (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.

*Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010) (citing *N.A.S. Impor. Corp. v. Chenson Enter., Inc.*, 968 F.2d 250, 252-53 (2d Cir. 1992)). In awarding statutory damages, a high award is warranted in situations where an infringer's conduct is "willful," in that the infringer had knowledge— actual or constructive—that it was infringing on a valid copyright. *N.A.S.*, 968 F.2d at 252. Reckless disregard for the copyright holder's rights also suffices to award enhanced damages of up to $150,000. *Id.*

Unlike an award of actual damages, an award for statutory damages may include "multipliers" that cannot be considered when awarding actual damages, such as the willfulness of the infringement,

deterrence of future similar conduct, and compensation for costs.  *See Stehrenberger v. RJ Reynolds Tobacco Holdings, Inc.*, 335 F. Supp. 2d 446, 467-68 (S.D.N.Y. 2004).  For this reason, "statutory damages awards frequently greatly exceed the actual damages shown."  *Stevens v. Aeonian Press, Inc.*, No. 00-CV-6330 (JSM), 2002 WL 31387224, at *2 (S.D.N.Y. Oct. 23, 2002).

Under 17 U.S.C. § 504(c)(1), only one award of statutory damages is permitted for any "work" infringed, with all parts of a compilation constituting one work.  Songs in an album or other compilation constitute a single work.  *See Bryant*, 603 F.3d at 140-41.  As such, the copyrighted works at issue constitute a single work and Plaintiff is entitled to only one award of statutory damages per Defendant.

 Defendants' failure to participate in this litigation is evidence of willfulness for the purpose of awarding enhanced statutory damages of up to $150,000.  *See, e.g.*, *All-Star*, 775 F. Supp. 2d at 621 ("Defendants have defaulted . . . and by virtue of their default are deemed to be willful infringers.); *Honey Café*, 2006 WL 3694584, at *6.  Additionally, Defendants are in the business of providing customers with access to published works of music and should have been aware of the need to comply with copyright laws.  *See, e.g.*, *Agence France Presse v. Morel*, No. 10-CV-2730 (AJN), 2014 WL 3963124, at *3 (S.D.N.Y. Aug. 13, 2014) (noting that "whether the infringer had experience with previous copyright ownership . . . or work in an industry where copyright is prevalent" are considerations in determining whether infringement was willful (citation omitted)); *Castle Rock Ent. v. Carol Publ'g Grp., Inc.*, 955 F. Supp. 260, 267 (S.D.N.Y. 1997) (finding evidence that defendants had experience with copyright laws relevant to willfulness analysis), *aff'd sub nom. Castle Rock Ent., Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132 (2d Cir. 1998).

Plaintiff bases his lost revenue on the license fees that he would have charged Defendants to use the copyrighted works, that is, $1,800 per year.  Had Defendants been paying Plaintiff $1,800 each year in licensing fees since 2018 when this suit was initiated, Plaintiff would have received $9,000 from

each Defendant to date. *See, e.g., N.Y. One*, 2007 WL 869587, at *6 (calculating statutory damages based in part on the amount plaintiff would have earned by now had defendant entered into licensing agreement with plaintiff years earlier).

An award that is a multiplier of the works' reasonable license fee will likely have a deterrent effect on future infringement by imposing a cost on Defendants that outweighs the benefit associated with their continued unauthorized use of the works. *See, e.g., Broad. Music, Inc. v. R Bar of Manhattan, Inc.*, 919 F. Supp. 656, 660 (S.D.N.Y. 1996) ("[I]n order to put such infringers 'on notice that it costs less to obey the copyright laws than to violate them,' a statutory damage award should significantly exceed the amount of unpaid license fees." (quoting *Rodgers v. Eighty Four Lumber Co.*, 623 F. Supp. 889, 892 (W.D. Pa. 1985)); *Broad. Music, Inc. v. Pamdh Enters., Inc.*, No. 13-CV-2255 (KMW), 2014 WL 2781846, at *4 (S.D.N.Y. June 19, 2014) (finding award of "slightly less than three times the unpaid licensing fees . . . well within the range of statutory damage awards in similar cases"); *Broad. Music, Inc. v. Bayside Boys, Inc.*, No. 12-CV-03717 (CBA)(VMS), 2013 WL 5352599, at *6 (E.D.N.Y. Sept. 23, 2013) [hereinafter *Bayside Boys*] (noting that "courts sometimes award damages equal to three to five times the cost of the licensing agreement that Defendants could have obtained").

Finally, Defendants have provided no cooperation to Plaintiff in determining the value of the copyrighted material or Defendants' profits. By failing to participate in this litigation, Defendants have hampered Plaintiff's ability to obtain information necessary to fully support his request for damages. Therefore, their default "weighs in favor of a substantial statutory award." *Parsons*, 2021 WL 931506, at *9.

Applying these considerations to the present case, I find that an award that is a multiplier of the licensing fees Plaintiff would have received is warranted. *See, e.g., Bayside Boys*, 2013 WL 5352599, at *6. Accordingly, I respectfully recommend that Plaintiff be awarded statutory damages in the

18

amount of $27,000 per Defendant, which is three times the annual fee that Plaintiff would have received had each Defendant entered into an annual licensing agreement with him beginning in 2018.

### III. Injunctive Relief

In addition to monetary damages, Plaintiff requests that the Court issue "an injunction restraining Defendants, their officers, agents, employees, and all persons acting in concert with them from engaging in further unlawful conduct." (Compl. ¶ 2 at 7.) Plaintiff cites to 17 U.S.C. § 502, which provides in relevant part that a court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." (Mem. in Sup. at 6 (quoting 17 U.S.C. § 502(a)).) Plaintiff also requests, should Defendants not pay Court-ordered damages within one month of any damages award, that the Court order seizure of Defendants' karaoke machines until Defendants make the required payments. (Motion at 3.)

A permanent injunction should be granted only when a plaintiff has established that (1) he has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardships tips in the plaintiff's favor; and (4) a permanent injunction is consistent with the public interest. *Broad. Music, Inc. v. Prana Hosp., Inc.*, 158 F. Supp. 3d 184, 195 (S.D.N.Y. 2016) (citing *Salinger v. Colting*, 607 F.3d 68, 77 (2d. Cir. 2010)).

Evidence that "a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer[,]" establishes irreparable harm. *Beastie Boys v. Monster Energy Co.*, 87 F. Supp. 3d 672, 677 (S.D.N.Y. 2015) (citation omitted). Monetary damages are inadequate compensation when there is a risk that a defendant, if not enjoined, will continue to infringe on the owner's copyright. *See Hounddog Prods., LLC v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619, 633 (S.D.N.Y. 2011).

Plaintiff has demonstrated that injunctive relief is warranted. Plaintiff's lost sales and any diminution in value of the copyrighted works are difficult to measure, and there is no adequate remedy

at law to ensure that Defendants will not continue to infringe on Plaintiff's copyright. Because actual damages are unmeasurable, any monetary award may fall short of the actual harm caused.

The balance of hardships also weighs in Plaintiff's favor, as Defendants have not presented evidence of any hardship that they will face by being required to stop infringing on Plaintiff's copyright. *See id.* (finding balance of hardships weighs in plaintiff's favor where defendant "has not identified any hardships for the Court to consider"). The evidence provided demonstrates that Defendants operate establishments with "at least 7 karaoke rooms" and that their karaoke machines "have the ability to delete or restore all songs." (Inquest Answers at 2.) Further, it appears that Jae Ho Lee's songs are not the only songs offered for use on the TJ Media Karaoke machines at the establishments; thus, Defendants' businesses will not be substantially disadvantaged as a result of the injunction against their further use of those songs. Plaintiff, on the other hand, would be harmed were the infringement to continue.

Injunctive relief is also consistent with the public's interest in enforcing copyright laws to ensure individuals are incentivized to "contribute to the store of knowledge." *See Salinger*, 607 F.3d at 82.

Accordingly, a permanent injunction enjoining Defendants' continued unauthorized use of Plaintiff's copyrighted works is warranted.

With regard to seizure of Defendants' TJ Media Karaoke machines, 17 U.S.C. § 503(b) provides that,

> As part of a final judgment or decree, the court may order the destruction or other reasonable disposition of all copies or phonorecords found to have been made or used in violation of the copyright owner's exclusive rights, and of all . . . tapes . . . or other articles by means of which such copies or phonorecords may be reproduced.

"A forfeiture order under Section 503(b) is an equitable remedy 'issued under the broad powers vested in a trial judge.'" *Hounddog*, 826 F. Supp. 2d at 633 (quoting *Rogers v. Koons*, 960 F.2d 301, 313 (2d Cir. 1992)). The standard for issuing a forfeiture order "mirrors the standard for granting injunctive relief."

*Id.* (citation omitted). "The Court refrains from granting this type of relief if it may deprive the defendant of legitimate use of the items in question, or where it is clear that the defendant will abide by the court's order to cease infringing activity." *Id.* at 634.

Plaintiff requests seizure of Defendants' karaoke machines, not to ensure against further infringement, but as a means of enforcing payment of damages. I do not find this to be an appropriate remedy where Plaintiff has not shown that the TJ Media Karaoke machines contain exclusively or primarily the copyrighted works, and Defendants have not yet been given an opportunity to comply with the Court's order enjoining further use of the copyrighted works. *See Roku Karaoke*, 2022 WL 4354641, at *4 (denying similar request by Plaintiff, stating "17 U.S.C. § 503 . . . does not authorize the Court to order the temporary seizure of such [karaoke machines] as a penalty for anticipated failure to pay a damages award.); *see, e.g., TVT Recs. v. Island Def Jam Music Grp.*, 279 F. Supp. 2d 366, 408-09 (S.D.N.Y. 2003) (concluding balance of equities counseled against issuing an order of recall and destruction where injunctive relief and statutory damages were already awarded), *rev'd on other grounds*, 412 F.3d 82 (2d Cir. 2005); *N. Am. Karaoke-Works Trade Ass'n, Inc. v. Entral Grp. Int'l, LLC*, No. 06-CV-5158 (LTS)(MHD), 2010 WL 2158294, at *3, 8 (S.D.N.Y. May 27, 2010) (declining to order seizure of hard drives that contained copyrighted works as "excessive" where "a significant portion" of the hard drives contained non-infringing works and statutory damages and injunction barring further infringement were awarded).

However, if any of the Defendants should fail to abide by the Court's Order, further relief, including seizure as requested by Plaintiff, may be warranted. *See, e.g., Nat'l Rsch. Bureau Inc. v. Kucker*, 481 F. Supp. 612, 615–16 (S.D.N.Y. 1979) (finding defendants' willful disregard of an injunctive order justifies granting further relief, including impoundment and forfeiture); *Reuters Television Ltd. v. CEL Commc'ns, Inc.*, No. 94-CV-1111 (RPP), 1994 WL 410994, at *1-2 (S.D.N.Y. Aug. 4, 1994) (ordering

injunctive relief where defendants did not comply with judgment and continued to use copyrighted materials without making payments to plaintiff).

<u>**CONCLUSION**</u>

Based on the forgoing, I respectfully recommend that Plaintiff be awarded statutory damages in the amount of $27,000 against 162 D&Y Corp. (d/b/a Flower Karaoke); $27,000 against Harmony Karaoke KTV Inc. (d/b/a Harmony Karaoke); $27,000 against Open Karaoke Corp. (d/b/a Yul Lin Karaoke); $27,000 against Lalala of NY, Inc. (d/b/a Fantazia), $27,000 against JKK One Inc. (d/b/a Caramel); $27,000 against Gomunamu Inc. (d/b/a Sense); $27,000 against Sonaki Group, Inc. (d/b/a Tomato); $27,000 against Something 1 Inc. (d/b/a Something One, Inc.); and $27,000 against YS2 Enterprises Inc. (d/b/a CEO Business Club).

I also recommend the issuance of a permanent injunction enjoining each Defendant from continuing to use Plaintiff's copyrighted works. Should any Defendant fail to comply with the Court's Order, I recommend that Plaintiff be permitted to make a request to the Court for further remedies, including seizure of the Defendant's TJ Media Karaoke machines containing the copyrighted works.

Plaintiff is directed to serve this Report and Recommendation on each of the Defendants forthwith and file proof of service on the docket by January 8, 2023. Any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen (14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file an objection waives the right to further judicial review of this Report and Recommendation. *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated: Brooklyn, New York
      December 30, 2022